UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANN DENISE THIBODEAU, | ) |
| | ) |
|     Plaintiff | ) |
| | ) |
| v. | )    No. 1:13-cv-00037-NT |
| | ) |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) |
| | ) |
|     Defendant | ) |

## REPORT AND RECOMMENDED DECISION

After hearing on Plaintiff's application for disability insurance benefits under Title II and Title XVI of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff Ann Denise Thibodeau has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits.

Following a review of the record, and after consideration of the parties' written and oral arguments, as explained below, the recommendation is that the Court affirm the administrative decision.

### THE ADMINISTRATIVE FINDINGS

Because the Appeals Council "found no reason" to review that decision, the Acting Commissioner's final decision is the December 30, 2011, decision of the Administrative Law Judge. The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920.

At step 1 of the sequential evaluation process, the ALJ determined that Plaintiff meets the insured status requirements of Title II through March 31, 2013, and has not engaged in substantial

gainful activity from March 1, 2008, the date of alleged onset of disability. (ALJ Decision, Findings and Conclusions, ¶¶ 1, 2.) In the second step of the analysis, the ALJ found that Plaintiff has the following severe physical/mental impairments: right shoulder impingement with bilateral ulnar neuropathy, anxiety disorder/generalized anxiety, and personality disorder with depressive symptoms. (*Id.* ¶ 3.) At step 3, the ALJ concluded that this combination of impairments would not meet or equal any listing in Appendix 1 to 20 C.F.R. Part 404, Subpart P. The listing assessment is not challenged. The ALJ determined that Plaintiff's mental limitations impose mild limitations in activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace. He also found that Plaintiff experienced one episode of decompensation in September 2008. (*Id.* ¶ 4.)

Prior to further evaluation at steps 4 and 5, the ALJ assessed Plaintiff's residual functional capacity. The ALJ found that Plaintiff's physical restrictions preclude climbing ladders, ropes, and scaffolds, and all overhead work; that Plaintiff's mental restrictions do not prevent Plaintiff from understanding, remembering, and carrying out detailed instructions, but do rule out more than occasional changes in the work setting and fast paced production environments such as assembly or quota work; and that Plaintiff cannot work with the general public, but can have occasional interaction with co-workers for non-collaborative work and occasional interaction with supervisors. (*Id.* ¶ 5.) The ALJ ultimately concluded that Plaintiff has a residual functional capacity to perform less than the full range of light work.

At step 4, the ALJ found that Plaintiff's residual functional capacity would permit her to perform past relevant work in the sedentary occupation of Reader. (*Id.* ¶ 6.) Additionally and alternatively, at the fifth stage of the analysis, the ALJ determined that Plaintiff would be able to transition to other work, including in the occupations of Surveillance Systems Monitor and

Shipping-Receiving Weigher. (*Id.*) Based on these findings, the ALJ concluded that Plaintiff has not been under disability from the alleged onset date of March 1, 2008, through the date of decision. (*Id.* ¶ 7.)

### PLAINTIFF'S STATEMENT OF ERRORS

**A.    Standard of Review**

The Court must affirm the administrative decision so long as it applies the correct legal standards and is supported by substantial evidence. This is so even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**B.    Discussion**

Plaintiff argues that the ALJ erred because he did not give appropriate weight to the opinion of consulting expert psychological examiner, Edward Quinn, Ph.D. (Statement of Errors at 2-4.) She asserts that the ALJ impermissibly drew her own conclusions from raw medical data when she focused on one factor identified by Dr. Quinn (the smell of alcohol) as evidence of the unreliability of Dr. Quinn's opinion, despite the fact that Dr. Quinn did not suggest that he considered the smell of alcohol to be significant. (*Id.* at 4-5.) Plaintiff further argues that the opinion of testifying medical expert Charles Tingley, Ph.D., does not support the ALJ's residual functional capacity finding that Plaintiff can persist at work activity throughout an eight-hour

3

workday, five days per week. (*Id.* at 6-8.) Finally, Plaintiff maintains that the ALJ erred by not discussing the opinions of consulting expert psychological reviewers Peter Allen, Ph.D., and Brian Stahl, Ph.D. (*Id.* at 9-10.)

### 1. *Treatment of Dr. Quinn's examination-based medical source statement*

Following a consultative examination, Dr. Quinn prepared a medical source statement in which he opined that Plaintiff is able to follow work rules, is likely to have difficulties interacting with others, should be able to function independently, "may very well" have difficulties with anxiety and social relationships, appears capable of maintaining concentration, persistence, and pace, and "may have problems with reliability." (Ex. 5F at 3-4.)

According to Plaintiff, the ALJ did not provide adequate grounds for considering her symptoms as not disabling given that Dr. Quinn concluded that Plaintiff is likely to have difficulties interacting with others in a work setting. (Statement of Errors at 5-6.) Plaintiff highlights Dr. Quinn's assessment that Plaintiff "clearly" has issues with emotional stability and social interaction and that she "may" not be reliable. (*Id.* at 6.) The ALJ found that Plaintiff cannot tolerate more than occasional changes in the work setting or fast paced production environments, and that Plaintiff cannot work with the general public, but can have occasional interaction with co-workers and supervisors.

An ALJ has discretion to resolve conflicts among expert opinions by according great weight to the opinion of a nonexamining, consulting expert. *See, e.g., Rodriguez,* 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts."); *Shaw v. Sec'y of HHS,* No. 93–2173, 1994 WL 251000, at *4 (1st Cir. June 9, 1994) ("The regulations do not require a particular view of the evidence, but

leave ambiguities and inconsistencies to be sifted and weighed by the ALJ[.] . . . While generic deference is reserved for treating source opinions, the regulations also presuppose that nontreating, nonexamining sources may override treating doctor opinions, provided there is support for the result in the record.") (citation omitted).

Contrary to Plaintiff's arguments, the ALJ's findings reasonably account for Dr. Quinn's concern over Plaintiff's ability to interact socially in the work setting. The ALJ did not ignore Dr. Quinn's medical source statement. Rather, the ALJ found that Dr. Quinn's source statement was entitled to some weight, to the extent it was consistent with the ALJ's residual functional capacity (RFC) finding. (PageID # 45.) Otherwise, the ALJ placed great weight on the opinion of the testifying, reviewing expert, Dr. Tingley, who agreed that there would be some issues with large groups and production environments due to Plaintiff's social discomfort and anxiety factors. (*Id.*) The ALJ thus fairly and appropriately considered the findings and opinions of Dr. Quinn, as interpreted through Dr. Tingley.

Plaintiff nevertheless complains that the ALJ unfairly discounted Dr. Quinn's assessment based on the fact that Dr. Quinn noted in his mental status examination that there was "a slight odor of alcohol" emanating from the Plaintiff. (*Id.*) In the ALJ's view, the presence of alcohol raised the possibility that Plaintiff's conduct before Dr. Quinn was not a "fully accurate representation of her average functional abilities." (PageID # 45.) According to Plaintiff, the ALJ's reliance on the smell of alcohol represents an assessment of medical data that is properly entrusted to the experts. (Statement of Errors at 5.)

An ALJ, however, is required to and often must evaluate and distinguish between and among various medical opinions and conflicting medical evidence. In this case, the ALJ simply identified a factor that could have accounted for atypical examination results. She did not reject

5

Dr. Quinn's findings, but noted a basis for concluding that Dr. Tingley's testimony was more reliable. When an ALJ cites factual information to distinguish between potentially conflicting evidence, the ALJ is not, as Plaintiff argues, interpreting medical data.

In addition, the ALJ's residual functional capacity finding is supported by substantial evidence on the record. That evidence includes, but is not limited to, Dr. Tingley's testimony. Dr. Tingley found that the need for a social limitation with the general public, an "occasional" limitation with respect to coworkers and supervisors, and the possibility that detailed instructions "could occur," but not in a pressured environment. (PageID ## 94, 95.) When questioned whether attendance would be a concern, Dr. Tingley testified that attendance "would have to be a focus with her counselor" after noting that counseling was ongoing. (PageID # 96.) Plaintiff argues that Dr. Tingley simply did not provide sufficient evidence to repudiate Dr. Quinn's view that Plaintiff "clearly" has issues and "may" not be reliable. In particular, Plaintiff emphasizes that Dr. Tingley did not *deny* the presence of an attendance concern. (Statement of Errors at 8-9.) The ALJ, however, was not compelled to construe Dr. Tingley's testimony as confirming an attendance problem. Instead, Dr. Tingley in essence testified that Plaintiff's counselor could successfully assist Plaintiff in addressing any attendance issues. Moreover, Dr. Quinn merely observed that there "may" be a reliability problem. He did not opine that reliability or attendance problems were likely.

Furthermore, Dr. Tingley fairly considered Plaintiff's psychological issues when he ruled out a return to past relevant work of a supervisory nature, or work in a large workplace with many employees. (PageID # 95-96.) He did not allow, however, that attendance in any occupation would be ruled out by psychological factors. In short, Dr. Tingley's expert opinion constitutes

substantial evidence in support of the ALJ's findings.[1]

### 2. *Adequacy of ALJ's discussion of Exhibits 7F and 8F*

Plaintiff contends that the ALJ did not adequately discuss the mental RFC findings of consulting reviewers Peter Allen, Ph.D. (Ex. 7F) and Brian Stahl, Ph.D. (8F). (Statement of Errors at 9-10.) Defendant concedes that the ALJ's discussion of these findings is likely insufficient, but maintains that the omission is harmless given the ALJ's reliance on Dr. Tingley's later-in-time opinion and given that the ALJ's step 5 alternative finding includes the Shipping-Receiving Weigher occupation, which job is classified in the Dictionary of Occupational Titles as SVP 2 and reasoning level 3. (Opposition at 9-11.)

In December 2009, Peter Allen, Ph.D., found that Plaintiff's concentration would be adequate for routine tasks for a normal workday/week and that Plaintiff could work with a small group of coworkers and supervisors, without indicating that poor attendance would rule out such work. (Ex. 7F, PageID # 455.) Dr. Allen's mental RFC assessment was also "affirmed as written" by Brian Stahl, Ph.D., on reconsideration in April 2010. (Ex. 8F, PageID # 469.) The ALJ's discussion of these findings is brief. The ALJ merely indicated that her RFC finding was "supported" by the consulting reviewers' assessments. (PageID # 45.) Plaintiff argues that the ALJ's citation to the reviewers' assessments is inaccurate because the reviewing physicians determined that Plaintiff would struggle with complexities, cannot work with the public, can perform only routine tasks, and can adapt to only minor changes at work. (Statement of Errors at 9.)

---

[1] The record includes other evidence that supports the ALJ's finding. Among other things, the ALJ noted that the objective findings of record do not include clinical data suggesting impairment to the degree alleged and suggest, instead, family-life factors and longitudinal mental stability with the use of medication. (PageID # 44.)

The ALJ's RFC finding is not, in fact, supported by the Allen and Stahl mental RFC assessments, particularly where the ALJ's finding allows for detailed instructions and the consulting reviewers opined that Plaintiff would struggle with complexities. Nevertheless, as explained above, the ALJ's opinion is supported by Dr. Tingley's testimony. The fact that the reviewing physicians' opinions are in conflict with Dr. Tingley's opinion does not invalidate the ALJ's conclusion.

The ALJ's step 5 finding also provides an alternative basis for Plaintiff's ability to perform simple/routine work. The identified occupation of Shipping-Receiving Weigher, Dictionary of Occupational Titles # 222.367-074 (19,000 jobs), has a general educational development (GED) reasoning level of 3, which falls into the "simple" category. *See Welch v. Astrue*, No. 1:11-CV-384-GZS, 2012 WL 3113148, at *6 (D. Me. July 11, 2012), *report and recommendation adopted*, 2012 WL 3113144 (D. Me. July 31, 2012) (concluding that GED level 3 reasoning classification is consistent with a restriction to simple, unskilled work). Plaintiff has not presented evidence that would suggest that any of the limitations identified by Drs. Allen and Stahl would preclude work in this occupation. Ultimately, the ALJ's conclusion that the RFC assessments of the reviewing physicians support her conclusion is accurate to the extent that one considers the occupation of Shipping-Receiving Weigher.

In sum, therefore, the ALJ's inadequate discussion of Dr. Allen and Dr. Stahl's mental RFC assessments does not undermine her RFC findings given Dr. Tingley's testimony and the ALJ's reliance on other portions of the medical record. In addition, any concern about the ALJ's consideration of the assessments of Drs. Allen and Stahl are alleviated by the ALJ's finding, which is supported by the record evidence, that Plaintiff is capable of working in the Shipping-Receiving Weigher occupation.

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court affirm Defendant's final decision and enter judgment in favor of Defendant.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

April 14, 2014